Emma L. Mediak
Luc L. Brodhead
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Phone (406) 523-2500
Fax (406) 523-2595
elmediak@garlington.com
llbrodhead@garlington.com

Attorneys for BNSF Railway Company

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JACKSON WELLS, as Personal Representative for the Estate of THOMAS E. WELLS, deceased; and JUDITH HEMPHILL, as Personal Representative for the Estate of JOYCE H. WALDER, deceased, | Cause No. CV-25-30-GF-JTJ |
| Plaintiffs, | BNSF RAILWAY COMPANY'S BRIEF IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS |
| v. | |
| BNSF RAILWAY CO., a Delaware corporation and JOHN DOES 1-8, | |
| Defendants. | |

TABLE OF CONTENTS

Page

I.    INTRODUCTION ...........................................................................1

II.   BACKGROUND ............................................................................2

III.  LEGAL STANDARD .....................................................................4

IV.   ARGUMENT .................................................................................5

A.   Plaintiffs' Claims are Barred by the Applicable
     Statute of Limitations. ............................................................7

B.   Plaintiffs' Claims Against BNSF Must be Dismissed Because
     Plaintiffs are not Third-Party Claimants and BNSF was the
     Defendant in the Underlying Action, not an Insurer or Adjuster. .........9

     1.   Plaintiffs are not "Third-Party Claimants" With Rights
          Under the UTPA........................................................10

     2.   BNSF is not an Insurer or Adjuster Operating in the
          Business of Insurance. ...............................................12

     3.   BNSF's Alleged "Buy-Back" of Insurance Policies
          and "Self-Insurer" Status Does not Subject it to
          UTPA Liability. ........................................................15

     4.   Imposing UTPA Liability on BNSF for Defending Itself in the
          Underlying Action Would Contravene its Right to a Zealous
          Defense and Access to the Courts.............................................17

C.   BNSF Had a Reasonable Basis in Law and in Fact to Contest
     Plaintiffs' Claims in the Underlying Action. ......................................18

TABLE OF CONTENTS CONT.'D

Page

1.    BNSF had a Reasonable Basis in Law and in Fact
      to Challenge Plaintiffs' Negligence Claim. .............................21

2.    BNSF had a Reasonable Basis in Law and in Fact to
      Contest Plaintiffs' Strict Liability Claims Under
      Montana's Common Carrier Exception and Federal
      Preemption .................................................................................22

3.    BNSF had a Reasonable Basis in Law and in Fact to Contest
      Plaintiffs' *Ridley* Demands........................................................26

D.    Plaintiffs' Claim 1 for Equitable and Disgorgement
      Relief is Not a Substantive Cause of Action and
      Must be Dismissed. ................................................................27

E.    Amendment Would be Futile. ..............................................27

V.    CONCLUSION................................................................................28

CERTIFICATE OF COMPLIANCE.......................................................29

TABLE OF AUTHORITIES

Page(s)

**Cases**

*BNSF Ry. Co. v. Asbestos Claims Court*,
  2020 MT 59, 399 Mont. 180, 459 P.3d 857 ............................................ 15, 22-24

*BNSF Ry. Co. v. Ctr. for Asbestos Related Disease, Inc.*,
  No. CV 19-40-M-DLC, 2022 U.S. Dist. LEXIS 233804, at *10
  (D. Mont. Dec. 30, 2022) ..................................................................................22

*Brewington v. Emp'r Fire Ins. Co.*,
  1999 MT 312, 297 Mont. 243, 992 P.2d 237 (Mont. 1999) ................. 6, 8, 14, 16

*Byorth v. USAA Cas. Ins.*,
  No. CV 17-153-M-KLD, 2019 U.S. Dist. LEXIS 212701
  (D. Mont., Dec. 10, 2019) ...................................................................................4

*Coleman v. Nat'l Indem. Co*.,
  No. CV-19-39-GF-JTJ, 2025 U.S. Dist. LEXIS 131378
  (D. Mont. July 10, 2025) ............................................................................ passim

*Cranska v. UMIA Ins., Inc.*,
  709 F. Supp. 3d 1200 (D. Mont. 2024) ...............................................................26

*Dietz v. Geico Gen. Ins. Co.*,
  No. CV 16-74-H-CCL, 2016 U.S. Dist. LEXIS 175901
  (D. Mont. Dec. 20, 2016) ................................................................................ 7-8

*Fortner Honey, Inc. v. Allianz Glob. Risks US Ins. Co.*,
  No. CV 22-13-BLG-SPW-KLD, 2022 U.S. Dist. LEXIS 179400
  (D. Mont. Aug. 22, 2022) ............................................................................ 14, 16

*Giambra v. Travelers Indem. Co.*,
  2003 MT 289, 318 Mont. 73, 78 P.3d 880 ................................................... 20, 24

## TABLE OF AUTHORITIES CONT'D

Page(s)

*Hart v. PacificSource Health Plans*,
No. CV 18-56-BU-BMM-JCL, 2019 U.S. Dist. LEXIS 120930
(D. Mont. June 18, 2019)................................................................ 10-11

*Mark Ibsen, Inc. v. Caring for Montanans, Inc.*,
2016 MT 111, 383 Mont. 346, 371 P.3d 446 .......................................6

*Nelson v. Hartford Ins. Co.*,
No. CV 11-162-M-DWM, 2012 U.S. Dist. LEXIS 165944
(D. Mont. Nov. 20, 2012) ........................................................................8

*O'Fallon v. Farmers Ins. Exch.*,
260 Mont. 233, 859 P. 2d 1008 (1993)............................... 7, 10, 14, 16

*Ogden v. Mont. Power Co.*,
229 Mont. 387, 747 P.2d 201 (1987).............................................. 12-15

*Palmer by Diacon v. Farmers Ins. Exch.*,
261 Mont. 91, 861 P.2d 895 (1993)............................................5, 17-18

*Redies v. Attys. Liab. Protec. Socy.*,
2007 MT 9, 335 Mont. 233, 150 P.3d 930...........................................20

*Shattuck v. Kalispell Reg'l Med. Ctr.*,
2011 MT 229, 362 Mont. 100, 261 P.3d 1021.................................. 12-15

*Shepard v. Farmers Ins. Exch.*,
2020 MT 320, 402 Mont. 359, 477 P.3d 1114........................ 19, 21, 24

*State Farm Mut. Auto. Ins. Co. v. Freyer*,
2013 MT 301, 372 Mont. 191, 312 P.3d 403................................. 20, 25

*Stillwater Mining Co. v. AIG Claims, Inc.*,
No. CV 21-4-BLG-SPW-TJC, 2021 U.S. Dist. LEXIS 137883
(D. Mont. July 6, 2021) ............................................................ 7, 14, 16

TABLE OF AUTHORITIES CONT'D

Page(s)

*Teeter v. Mid-Century Ins. Co.*,
  2017 MT 292, 389 Mont. 407, 406 P.3d 464................................................ 19, 26

*Woodman v. Std. Ins. Co.*,
  No. CV 20-153-M-KLD, 2021 U.S. Dist. LEXIS 46061
  (D. Mont., March 11, 2021)........................................................................................4

**Statutes**

Montana Code Annotated § 33-1-101.......................................................................13

Montana Code Annotated § 33-1-201............................................................. 12-13, 15

Montana Code Annotated § 33-18-101.....................................................................12

Montana Code Annotated § 33-18-201.........................................6-7, 10, 12-14, 16

Montana Code Annotated § 33-18-242........................................................ 6, 16, 19

Montana Code Annotated § 61-6-301.......................................................................26

Montana Code Annotated § 61-6-304.......................................................................26

INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION | PAGES |
|---------|------------|-------|
| A | Complaint and Demand for Jury Trial, dated September 23, 2021, filed in the United States District Court, District of Montana, Great Falls Division, Cause No. CV-21-97-GF-BMM | A-1 to A-20 |
| B | Special Verdict Form (Plaintiff Wells), dated April 22, 2024, filed in the United States District Court, District of Montana, Great Falls Division, Cause No. CV-21-97-GF-BMM | B-1 to B-3 |
| C | Special Verdict Form (Plaintiff Walder), dated April 22, 2024, filed in the United States District Court, District of Montana, Great Falls Division, Cause No. CV-21-97-GF-BMMSpecial Verdict Form (Plaintiff Walder) | C-1 to C-3 |
| D | Order, dated October 16, 2023, filed in the United States District Court, District of Montana, Great Falls Division, Cause No. CV-21-97-GF-BMM | D-1 to D-23 |
| E | Excerpts of the Trial Transcript, dated April 8, 2024, in the United States District Court, District of Montana, Great Falls Division, Cause No. CV-21-97-GF-BMM | E-1 to E-8 |
| F | Appellant's Opening Brief, dated March 17, 2025, filed in the United States Circuit Court of Appeals for the Ninth Circuit, Case NO. 24-4802 | F-1 to F-77 |
| G | Appellees' Answering Brief, dated May 16, 2025, filed in the United States Circuit Court of Appeals for the Ninth Circuit, Case NO. 24-4802 | G-1 to G-82 |
| H | Appellant's Reply Brief, dated July 7, 2025, filed in the United States Circuit Court of Appeals for the Ninth Circuit, Case NO. 24-4802 | H-1 to H-39 |
| I | Appellees' Motion to Certify Determinative Question of Law to the Montana Supreme Court, dated May 16, 2025, filed in the United States Circuit Court of Appeals for the Ninth Circuit, Case NO. 24-4802 | I-1 to I-35 |

Defendant, BNSF Railway Co. ("BNSF"), hereby files its Brief in Support of its Rule 12(b)(6) Motion to Dismiss.

## I.     INTRODUCTION

Plaintiffs assert claims against BNSF for bad faith claims handling and settlement practices.  Plaintiffs' claims relate to BNSF's conduct while defending itself against their claims in the United States District Court, District of Montana, Great Falls Division, Cause No. CV-21-97-GF-BMM ("Underlying Action"). Plaintiffs' claims are subject to dismissal on three separate grounds.

First, Plaintiffs' claims are barred by the applicable three-year statute of limitations.  As alleged in the Complaint, Plaintiffs' claims accrued, at the latest, in September 2021, and this action was filed on April 18, 2025.  Plaintiffs' claims are therefore time-barred.

Second, Plaintiffs fail to state a claim against BNSF for its defense of itself in the Underlying Action.  Plaintiffs attempt to shoehorn their claims into the Montana Unfair Trade Practices Act ("UTPA"), suggesting BNSF had an obligation as an insurer or adjuster to settle the Underlying Action, as opposed to defending itself.  However, BNSF was the defendant and is not an insurance company or otherwise subject to the UTPA's claim handling and settlement obligations.  Plaintiffs are likewise not "third-party claimants" under the UTPA with rights against BNSF simply because it defended itself against their claims.

1

Third, even assuming *arguendo* Plaintiffs could assert a claim against BNSF, it had reasonable bases in both law and in fact to contest Plaintiffs' claims, which is a complete defense to liability.

## II.    BACKGROUND

Plaintiffs take issue with BNSF's defense of itself in the Underlying Action. There, Plaintiffs asserted both negligence and strict liability claims against BNSF for its operations in Libby, Montana, contending that such operations caused asbestos exposure and resulting harm.[1]  (Doc. 1 at 10); *see also* Decl. Emma L. Mediak ¶ 2, Aug. 25, 2025 ("Decl. Mediak"), Ex. A: Compl. & Demand Jury Trial (Underlying Action Sept. 23, 2021).

The jury in the Underlying Action concluded that Plaintiffs had failed to prove BNSF acted negligently.  Decl. Mediak ¶¶ 3-4, Ex. B: Special Verdict Form (Plaintiff Wells) (Underlying Action Apr. 22, 2024); Ex. C: Special Verdict Form (Plaintiff Walder) (Underlying Action Apr. 22, 2024).

---

[1] BNSF requests that the Court take judicial notice of the filings in the Underlying Action, along with the other orders and public records referenced in the Complaint and herein.  *See Coleman v. Nat'l Indem. Co*., No. CV-19-39-GF-JTJ, 2025 U.S. Dist. LEXIS 131378, at *4 (D. Mont. July 10, 2025) ("a court may consider 'documents [that] have been incorporated into the complaint by reference or are matters of which a court may take judicial notice'" and may "assume an incorporated document's contents are true" for the purposes of the 12(b)(6) motion to dismiss) (quoting *Orellana v. Mayorkas*, 6 F.4th 1034, 1042-43 (9th Cir. 2021)).

The record demonstrates that BNSF had a reasonable basis in both law and in fact to contest Plaintiffs' strict liability claim.  Plaintiffs sought summary judgment, which the court denied.  Decl. Mediak ¶ 5, Ex. D: Order at 15-23 (Underlying Action Oct. 16, 2023).  The court ruled BNSF could assert a defense to strict liability under the common carrier doctrine at trial, and that further "[d]evelopment of the record" was necessary to determine whether BNSF's actions fell within the doctrine.  Decl. Mediak ¶ 5, Ex. D at 15-23.

Early at trial, the district court expressed "**serious doubt** about the viability of [Plaintiffs'] strict liability claim."  Decl. Mediak ¶ 6, Ex. E: Trial Tr. 320:16-322:7 ("Trial Tr.") (Underlying Action Apr. 8, 2024) (emphasis added); *see also* Trial Tr. 1537:9–15.  After testimony was provided by several of Plaintiffs' experts, the district court reiterated its "doubts" and "serious questions" that Plaintiffs' strict liability claim was based on actions BNSF took as a common carrier and therefore immune from liability.  *See* Trial Tr. 1329:7–12; 1331:16–19.

BNSF is currently appealing the court's rulings on strict liability to the Ninth Circuit, asserting that, as a matter of law, all of BNSF's activities at issue in the Underlying Action fall within the common carrier exception or, in the alternative, Montana law is preempted by federal law.  The ICC Termination Act ("ICCTA") broadly preempts state laws affecting rail transportation, including how BNSF manages its rail operations and activities in a railyard.  Therefore, even if BNSF

were subjected to strict liability for those activities under Montana law, Montana law would be preempted by the ICCTA.  Decl. Mediak ¶ 7, Ex. F: Appellant's Opening Br., *BNSF Railway Company v. Jackson Wells, et. al.* (9th Cir. Mar. 17, 2025) (Case: 24-4802) ("Appeal"); Decl. Mediak ¶ 8, Ex. G: Appellees' Answering Br. (Appeal May 16, 2025); Decl. Mediak ¶ 9, Ex. H: Appellant's Reply Br. (Appeal July 7, 2025).  That appeal remains pending and oral argument has been scheduled for October 21, 2025.

### III.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) should be granted "when the complaint lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory."  *Byorth v. USAA Cas. Ins.*, No. CV 17-153-M-KLD, 2019 U.S. Dist. LEXIS 212701, at *2-3 (D. Mont., Dec. 10, 2019).  To survive a motion to dismiss, "[a] plaintiff must state a claim for relief that is 'plausible on its face.'"  *Woodman v. Std. Ins. Co.*, No. CV 20-153-M-KLD, 2021 U.S. Dist. LEXIS 46061, at *3 (D. Mont., March 11, 2021) (quoting *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013)).  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  *Woodman*, 2021 U.S. Dist. LEXIS 46061, at *3.  A court is "not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Coleman v. Nat'l*

*Indem. Co.*, No. CV-19-39-GF-JTJ, 2025 U.S. Dist. LEXIS 131378, at *4 (D. Mont. July 10, 2025) (quoting *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)).

## IV.   ARGUMENT

Plaintiffs ask this Court to recognize an entirely new cause of action against BNSF in an effort to punish BNSF for its decision to defend itself against (rather than settle) Plaintiffs' contested claims—including a meritless negligence claim and a strict liability claim that the Ninth Circuit may ultimately deem meritless.

The Montana Supreme Court has long rejected the notion that zealous advocacy during litigation can qualify as bad faith conduct.  *Palmer by Diacon v. Farmers Ins. Exch.*, 261 Mont. 91, 121-22, 861 P.2d 895, 914 (1993) (concluding litigation tactics by insurer's retained defense counsel were inadmissible in bad faith case because to "allow a jury to find that an insurer acted in bad faith by zealously defending itself is to impose" a penalty for simply acting "within the bounds of litigation conduct" and would therefore "impair[] access to the courts.").

BNSF respectfully requests that this Court decline the invitation to expand Montana's common law bad faith claim handling jurisprudence to allow such a novel claim against a defendant who is neither an insurer nor insurance adjuster.

Plaintiffs allege that BNSF had certain "Claim Settlement Duties," which they define as "the statutory and common law duties an insurer owes to attempt

good faith settlement of insurance claims with reasonably clear liability, including

the duties to advance medical expenses, to conduct a reasonable investigation of

facts and data supporting such claims, to attempt good faith settlement of claims

based on facts derived through such investigation, and to not employ Leveraging in

the claim settlement process." (Doc. 1 at 8.)  Such alleged duties are nearly

verbatim recitations of Montana Code Annotated § 33-18-201.[2]  *See* (Doc. 1 at 8;

*see also* § 33-18-201(4), (6), (13).

Plaintiffs' common law bad faith claims thus ultimately flow from the UTPA

and, more specifically, § 33-18-201.  Notably, Plaintiffs do not present a statutory

cause of action under § 33-18-242.[3]  *See* (Doc. 1.)  Although, apart from § 33-18-

242 claims, the UTPA does not provide for any other private cause of action, the

Montana Supreme Court has recognized that a third-party claimant can bring a

common law bad faith claim against an insurer, an insurance adjuster, or an

independent adjusting company for violations of § 33-18-201.  *Compare Mark*

*Ibsen, Inc. v. Caring for Montanans, Inc.*, 2016 MT 111, ¶ 50, 383 Mont. 346, 371

P.3d 446 *with Brewington v. Emp'r Fire Ins. Co.*, 1999 MT 312, 297 Mont. 243,

992 P.2d 237 (Mont. 1999) (holding that § 33-18-242 does not prohibit a third-

---

[2]  Unless otherwise noted, all statutory citations refer to the 2023 version of
Montana Code Annotated.

[3] In the event Plaintiffs assert a statutory claim under § 33-18-242, BNSF reserves
the right to seek dismissal of such a claim on the same and additional grounds
presented in this motion.

party claimant from bringing an action for common law bad faith against an insurer); *see also O'Fallon v. Farmers Ins. Exch.*, 260 Mont. 233, 859 P. 2d 1008 (1993) (allowing common law action by third-party claimant against insurer and adjuster for violation of § 33-18-201(4) and (6)) (citing *Klaudt v. Flink*, 202 Mont. 247, 658 P.2d 1065); *see also Stillwater Mining Co. v. AIG Claims, Inc.*, No. CV 21-4-BLG-SPW-TJC, 2021 U.S. Dist. LEXIS 137883, at *11-12 (D. Mont. July 6, 2021) (allowing claim against independent adjusting company).  However, as discussed below, Montana courts have only ever recognized such a claim when asserted by a "third-party claimant" and against insurance companies or adjusters responsible for handling an underlying insurance claim.

Plaintiffs' claims must be dismissed because: (1) the Complaint was filed after the statute of limitations expired; (2) Plaintiffs are not a "third-party claimant" and their claims are inappropriately brought against the defendant in the Underlying Action, not an insurer or adjuster; and (3) BNSF had reasonable bases in law and in fact to contest Plaintiffs' claims.

## A.    Plaintiffs' Claims are Barred by the Applicable Statute of Limitations.

Plaintiffs' Complaint must be dismissed because it was filed after the applicable statute of limitations expired.  The statute of limitations for common law bad faith is three years.  *See Dietz v. Geico Gen. Ins. Co.*, No. CV 16-74-H-

CCL, 2016 U.S. Dist. LEXIS 175901, at *3 (D. Mont. Dec. 20, 2016) (citing § 27-2-204(1) and *Brewington*, 992 P.2d at 241).

Such claims accrue, triggering the statute of limitations, "when all the elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action." *Dietz*, 2016 U.S. Dist. LEXIS 175901, at *3-4 (quoting *O'Connor v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2004 MT 65, ¶ 10 320 Mont. 301, 87 P.3d 454); *see also Nelson v. Hartford Ins. Co.*, No. CV 11-162-M-DWM, 2012 U.S. Dist. LEXIS 165944, at *7-10 (D. Mont. Nov. 20, 2012) (a bad faith claim is not a continuing tort and an insurance carriers' reaffirmation of its position does not reset the statute of limitations period).

"For a common law bad faith claim, a claimant need not wait for resolution of the underlying claim before bringing a bad faith action, but can proceed when 'the last fact essential to the cause of action' arises, whether or not damages are finalized." *Dietz*, 2016 U.S. Dist. LEXIS 175901, at *4 (quoting *E.W. v. D.C.H.*, 231 Mont. 481, 484, 754 P.2d 817, 819-20 (Mont. 1988)).

Here, as alleged in the Complaint, Plaintiffs' bad faith claim against BNSF first accrued in September 2021.  Namely, Plaintiffs allege that:

> 30.    At all times from the September 2021 presentation of Plaintiffs' claims through April 22, 2024, BNSF failed:
> > a.    to make timely or reasonable settlement offers or settlement contribution offers;

> b.    to make reasonable attempts to negotiate a fair
> settlement of Plaintiffs' insurance claims; and
> c.    to make any settlement, payment or advance
> payments of any medical care expenses.

(Doc. 1 at 13.)  In other words, Plaintiffs allege that, starting in September 2021,

BNSF was acting in bad faith.

Plaintiffs allege in support of this accrual date as follows: (1) by March 25,

2020, BNSF had deposed Plaintiff Tom Wells regarding his asbestos exposure

claim; (Doc. 1 at 10); (2) a 2020 Montana Supreme Court ruling established that

BNSF's handling of asbestos constituted an abnormally dangerous activity, (Doc. 1

at 11-12); and (3) that Plaintiffs filed the Underlying Action against BNSF in

September 2021.  (Doc. 1 at 10-11.)  Plaintiffs then allege that, throughout this

period, BNSF acted in bad faith by denying liability and failing to make any

settlement offers or offers of advance payments.  (Doc. 1 at 23-24.)

As such, Plaintiffs' own allegations demonstrate that their claims in this

lawsuit, if any, accrued by September 2021, at the latest, meaning that the statute of

limitations expired in September 2024.  Plaintiffs' Complaint, filed April 18, 2025,

is therefore time-barred and must be dismissed.

**B.    Plaintiffs' Claims Against BNSF Must be Dismissed Because Plaintiffs
are not Third-Party Claimants and BNSF was the Defendant in the
Underlying Action, not an Insurer or Adjuster.**

Even assuming *arguendo* Plaintiffs' Complaint is not time-barred, it is still

subject to dismissal because Montana law does not recognize a claims handling

cause of action against BNSF for its decision to defend itself in the Underlying Action. Rather than asserting claims as "third-party claimants" against the insurer or adjuster who handled an underlying lawsuit, Plaintiffs seek to impose UTPA liability against the same defendant they sued in the Underlying Action—a railroad company who is neither an insurer nor an insurance adjuster and who had the right to access the courts and zealously defend itself in the Underlying Action. The Court should reject Plaintiffs' attempt to expand Montana common law to allow for such a claim.

### 1. Plaintiffs are not "Third-Party Claimants" With Rights Under the UTPA.

As a threshold point, Plaintiffs' claims fail as a matter of law because Plaintiffs lack status as "third-party claimants" necessary to invoke § 33-18-201's claim handling and settlement obligations. As discussed above, the only discernable cause of action asserted by Plaintiffs is akin to the common law/implied statutory cause of action described in *O'Fallon*. However, the Court in *O'Fallon* addressed the UTPA claim of a claimant who had asserted underlying tort claims against a first-party insured and thus, relative to the insurer and adjuster being sued for bad faith, was a "third-party claimant." *See O'Fallon*, 859 P.2d at 1009-10.

Montana courts have rejected "third-party claimant" status under the UTPA "absent some underlying third-party claim against a first-party insured." *Hart v.*

*PacificSource Health Plans*, No. CV 18-56-BU-BMM-JCL, 2019 U.S. Dist. LEXIS 120930, at *15 (D. Mont. June 18, 2019) (adopted in full by *Hart*, 2019 U.S. Dist. LEXIS 120826, at *11). In *Hart*, parents filed an insurance bad faith claim against a medical insurer for its handling of their children's medical claims. The court granted partial summary judgment in the insurer's favor, concluding that the parents did not qualify as a "third-party claimant" because there was no underlying suit against the insured children. *Hart*, 2019 U.S. Dist. LEXIS 120930, at *14-15.

Plaintiffs likewise do not qualify as "third-party claimants" in this action. As in *Hart*, there is no "liability insurance coverage at issue" or any "underlying third-party claim against a first-party insured." *Hart*, 2019 U.S. Dist. LEXIS 120930, at *15. As such, there can be no "third-party claimant" with rights under the UTPA. Although Plaintiffs may qualify as "third-party claimants" in a claim against BNSF's liability insurer, Zurich, Plaintiffs have abandoned such claims and are simply attempting to sue BNSF <u>again</u> based on its defense of itself in the Underlying Action.[4] Because Plaintiffs are not "third-party claimants" in the sense recognized under the UTPA, they have no rights to assert a common law bad faith

---

[4] Plaintiffs filed and then dismissed a bad faith lawsuit against BNSF and its insurer, Zurich. *Jackson Wells as Personal Representative for the Estate of Thomas E. Wells et. al. v. BNSF Ry. CO. et. al.* (D. Mont. Aug. 16, 2024) (CV-24-00069-JTJ).

claim to enforce the provisions of § 33-18-201, and their Complaint must be dismissed.

**2.    BNSF is not an Insurer or Adjuster Operating in the Business of Insurance.**

Plaintiffs' Complaint is also subject to dismissal because BNSF is not an insurer or adjuster subject to the claims handling and settlement obligations of § 33-18-201.  The provisions of the UTPA and Title 33 of the Montana Code Annotated ("Title 33"), dictate that such duties do not apply to BNSF, a railroad company, while defending itself against a contested claim.

The Montana Legislature enacted Title 33 "'to govern and regulate the business of insurance.'"  *Shattuck v. Kalispell Reg'l Med. Ctr.*, 2011 MT 229, ¶ 15, 362 Mont. 100, 261 P.3d 1021 (emphasis added) (quoting *Ogden v. Mont. Power Co.*, 229 Mont. 387, 392, 747 P.2d 201, 204 (1987)).  The purpose of the UTPA is "to regulate trade practices in the business of insurance."  § 33-18-101 (emphasis added).  Title 33 defines the term "insurer" as "every person engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance."  § 33-1-201(7)(a).  "Any person or entity desiring to act as an insurer must obtain a certificate of authority issued by the commissioner."  *Shattuck*, ¶ 13 (citing § 33-2-101(1), (3)).

Under these provisions, Montana courts maintain that a company is not an "insurer" for purposes of the UTPA if it is "primarily" in a business other than

insurance.  *See Ogden*, 747 P.2d at 204-205; *see also Shattuck*, ¶ 15.  In *Ogden*, a rancher asserted negligence and third-party bad faith claims against Montana Power Company ("MPC") related to a fire at his ranch and MPC's subsequent refusal to negotiate.  *Ogden*, 747 P.2d at 202-204.  On appeal, the Montana Supreme Court held that MPC was not an "insurer" because it was "primarily in the business of providing power and utilities to customers, although it insures itself."  *Ogden*, 747 P.2d at 205.  The Court reached this conclusion pursuant to Title 33's definition of "insurer"[5] and its purpose to "govern and regulate the business of insurance."  *Ogden*, 747 P.2d at 204-205 (quoting §§ 33-1-101 and 201(6); *see also Shattuck*, ¶ 15 (CHIP and DPHHS are not an "insurer" because "the 'business' of DPHHS is to provide public assistance, not to enter into insurance contracts") (quoting *Ogden*, 747 P.2d at 205).

Montana courts have never found that the provisions of § 33-18-201 apply to an entity acting outside the "business of insurance."  Rather, Montana courts have expressly approved common law bad faith claims only against the underlying tortfeasor's insurer or the adjuster who handled an insurance claim on behalf of the insurer.  *See Brewington*, ¶¶ 16-19; *O'Fallon*, 859 P.2d at 1014-15; *see also Stillwater Mining Co.*, 2021 U.S. Dist. LEXIS 137883, at *11-12.

---

[5] § 33-1-201(6) is the identical predecessor to § 33-1-201(7)(a).

Montana courts have likewise rejected bad faith claims where the defendant was neither an insurer nor an adjuster operating in the business of insurance.  *See Fortner Honey, Inc. v. Allianz Glob. Risks US Ins. Co.*, No. CV 22-13-BLG-SPW-KLD, 2022 U.S. Dist. LEXIS 179400, at *10 (D. Mont. Aug. 22, 2022) (adopted in full by No. CV 22-13-BLG-SPW, 2022 U.S. Dist. LEXIS 177998 (D. Mont. Sep. 29, 2022)).  In *Fortner Honey*, the plaintiff asserted claims against an insurance company and an individual hired to conduct an inspection for a property damage claim.  *Fortner*, 2022 U.S. Dist. LEXIS 179400, at *10.  The district court rejected the claim against the individual, holding that he was not technically an "adjuster" under Montana law because he did not negotiate an insurance claim and was not otherwise "engaged as indemnitor[], suret[y], or contractor[] in the business of entering into contracts of insurance as is required to state a MUTPA claim."  *See Fortner*, 2022 U.S. Dist. LEXIS 179400, at *10-14.  The district court therefore concluded that the individual "cannot be held liable under Mont. Code Ann. § 33-18-201."  *Fortner*, 2022 U.S. Dist. LEXIS 179400, at *14.

Here, Plaintiffs' claims fail because BNSF was neither an "insurer" nor an "adjuster" acting on behalf of an insurer to negotiate an insurance claim.  Like the defendants in *Ogden* and *Shattuck*, BNSF is not in the business of insurance, much less "primarily" in the business of insurance.  Plaintiffs' own allegations in the Underlying Action, the Complaint, and the rulings referenced therein demonstrate

14

that BNSF is a railroad company and not in the business of insurance.  (Doc. 1 at 10-13); Decl. Mediak ¶ 2, Ex. A at 3-15; Decl. Mediak ¶ 5, Ex. D; *see also BNSF Ry. Co. v. Asbestos Claims Court* ("*Eddy*"), 2020 MT 59, ¶¶ 3, 8-18, 399 Mont. 180, 459 P.3d 857.

Because BNSF was acting as the defendant in the Underlying Action (not as an adjuster or insurer) it is therefore not subject to bad faith liability and dismissal is appropriate.

### 3.    BNSF's Alleged "Buy-Back" of Insurance Policies and "Self-Insurer" Status Does not Subject it to UTPA Liability.

Plaintiffs contend BNSF is an "self-insurer" because it allegedly bought back certain insurance policies applicable to Plaintiffs' claims and agreed to indemnify the insurers against potentially covered claims.  (Doc. 1 at 15-16.)  Such a theory contravenes the plain language of § 33-1-201(7)(a), the Montana Supreme Court's decisions in *Ogden* and *Shattuck*, and the broad purpose of Title 33 and the UTPA to regulate the business of insurance, as discussed above.

If anything, the alleged buy-back agreements demonstrate a business decision by BNSF to go without insurance and face the risk of uninsured claims. Doing so does not convert BNSF into an insurance company subject to the UTPA. Any policy buy-backs BNSF may have executed with its insurers therefore does not subject BNSF to liability under § 33-18-201.  (Doc. 1 at 15.)

15

Plaintiffs' allegation that BNSF is a "self -insurer" is presumably in reference to the UTPA's prior definition of the term "insurer," as inclusive of "a person, firm, or corporation utilizing self-insurance to pay claims made against them." § 33-18-242(8) (1987). This old definition of "insurer" is applicable only for purposes of statutory § 33-18-242 claims and does not apply to Plaintiffs' common law claim. As analyzed above, Montana courts have never imposed common law bad faith liability on an entity that is not in the business of insurance. *See Brewington*, ¶¶ 16-19; *O'Fallon*, 859 P.2d at 1014-15; *Stillwater Mining Co.*, 2021 U.S. Dist. LEXIS 137883, at *11-12; *Fortner*, 2022 U.S. Dist. LEXIS 179400, at *10-14.

Further, before judgment was entered in the Underlying Action, the Montana Legislature redefined who qualified as an "insurer" in § 33-18-242 by removing any reference to a party "utilizing self-insurance to pay claims" and providing that "insurer" did not include a corporation "utilizing a captive insurance company to pay claims made against it." *Compare* § 33-18-242(8)(1987) *with* § 33-18-242(9)(2023). This new definition would apply to any claims Plaintiff may pursue under § 33-18-242, so it is not surprising that they omitted such a claim from their Complaint.

BNSF's alleged buy back of insurance policies or alleged status as a self-insured does not subject it to UTPA liability.

**4.    Imposing UTPA Liability on BNSF for Defending Itself in the Underlying Action Would Contravene its Right to a Zealous Defense and Access to the Courts.**

In addition to the reasons set forth above, Plaintiffs' claims must be dismissed because they are based on BNSF's defense of itself in the Underlying Action, and its decision to go to trial rather than capitulate and settle. (Doc. 1 at 12-15.) Imposing liability for defending itself would violate BNSF's rights to a zealous defense and access to the courts.

It is well established that a defendant's conduct during underlying litigation is inadmissible in a bad faith trial because allowing such evidence "hinders the right to defend and impairs access to the courts." *Palmer*, 861 P.2d at 913-17. In *Palmer*, after a bad faith trial, the Montana Supreme Court reversed the district court's admission of the defendant insurer's conduct defending the underlying uninsured motorist claim. *Palmer*, 861 P.2d at 899, 913-917. The Court reasoned that allowing such evidence "punishes insurers for pursuing legitimate lines of defense and obstructs their right to contest coverage of dubious claims." *Palmer*, 861 P.2d at 914.

The Court recognized that the rules of civil procedure "provide adequate remedies for improper conduct during the litigation process", and that the trial judge, not a subsequent jury, should "determine whether a party should be penalized for bad faith tactics". *Palmer*, 861 P.2d at 914.

17

The Court concluded that, "[t]o permit evidence of insurers' litigation strategies and tactics is to impede insurers' access to the courts and right to defend, because it makes them reluctant to contest coverage of questionable claims." *Palmer*, 861 P.2d at 915 (noting the importance of a party's "[f]ree access to the courts" and right to assert "a colorable claim . . . without fear of suffering a penalty more severe than typically imposed on defeated parties.") (quoting *White v. Western Title Ins. Co.*, 710 P.2d 309, 317 (Cal. 1985)).

Allowing Plaintiffs' claims would similarly deny BNSF's rights. The Court's message in *Palmer* is clear: entities must be able to defend themselves against lawsuits within the guidelines of civil procedure without fear of the jury in a subsequent bad faith claim questioning those tactics. *Palmer*, 861 P.2d at 914-915.

Plaintiffs' claims, which are based solely on BNSF's decisions and strategy in defense of the Underlying Action, must therefore be dismissed.

## C.    BNSF Had a Reasonable Basis in Law and in Fact to Contest Plaintiffs' Claims in the Underlying Action.

In addition to the reasons set forth above, Plaintiffs' Complaint must be dismissed because BNSF had a reasonable basis in law and in fact to contest Plaintiffs' claims in the Underlying Action.

An insurer has a complete defense to claims of bad faith, both under the UTPA and common law, if the insurer "had a reasonable basis in law or in fact for

contesting the claim". § 33-18-242(6); *Coleman*, 2025 U.S. Dist. LEXIS 131378, at *23 (granting motion to dismiss after concluding that National Indemnity Company had a reasonable basis in law and in fact to contest the claims against it, noting that "[w]hen an affirmative defense is obvious on the face of a complaint, a defendant can raise that defense in a motion to dismiss.").

"'[L]iability is reasonably clear when a reasonable person, with knowledge of the relevant facts and law, would conclude, for good reason, that the defendant is liable to the plaintiff. . . . [I]f liability was reasonably clear it would leave little room for objectively reasonable debate.'" *Shepard v. Farmers Ins. Exch.*, 2020 MT 320, ¶ 17, 402 Mont. 359, 477 P.3d 1114 (quoting *Teeter v. Mid-Century Ins. Co.*, 2017 MT 292, ¶ 16, 389 Mont. 407, 406 P.3d 464); *Coleman*, 2025 U.S. Dist. LEXIS 131378, at *13 (recognizing that the Montana Supreme Court had adopted the "reasonably clear" standard for dismissal of a UTPA claim in *Shepard*). The "reasonably clear" standard is comparable to a "'clear and convincing evidence'" standard. *Teeter*, ¶ 16 (citing *Peterson v. St. Paul Fire & Marine Ins. Co.*, 2010 MT 187, ¶ 37, 357 Mont. 293, 239 P.3d 904).

"[A]n insurer is entitled to challenge a claim on the basis of debatable law or facts," so long as "its position is not wholly unreasonable." *State Farm Mut. Auto. Ins. Co. v. Freyer*, 2013 MT 301, ¶ 47, 372 Mont. 191, 312 P.3d 403 (quoting *Safeco Ins. Co. v. Ellinghouse*, 223 Mont. 239, 248, 725 P.2d 217, 223 (1986)).

"The reviewing court is not to ask whether it 'agree[s] with the plaintiff's theories of liability in the underlying suit but, rather, whether the insurer's grounds for contesting those theories were reasonable under existing law.'" *Freyer*, ¶ 48 (quoting *Redies v. Attys. Liab. Protec. Socy.*, 2007 MT 9, ¶ 38, 335 Mont. 233, 150 P.3d 930). An insurer must "be able to test the scope and boundaries of legal duties, remedies, and defenses[.]" *Redies,* ¶ 41; *see also Freyer*, ¶¶ 45-54 (insurer had reasonable basis in law to contest claim where policy interpretation, while ultimately wrong, was not unreasonable); *Coleman*, 2025 U.S. Dist. LEXIS 131378 (same).

Moreover, "[r]easonableness is a question of law for the court to determine when it depends entirely on interpreting relevant legal precedents and evaluating the insurer's proffered defense under those precedents." *Redies*, ¶¶ 32, 35 (granting summary judgment where reasonable basis in law "is grounded on a legal conclusion, and no issues of fact remain in dispute."); *see also Freyer*, ¶ 48 (following *Redies*).

Where there are genuine disputes regarding liability, liability is not reasonably clear as a matter of law. *See Giambra v. Travelers Indem. Co.*, 2003 MT 289, ¶¶ 9-16, 318 Mont. 73, 78 P.3d 880. The court should dismiss bad faith claims for failure to state a claim when the absence of reasonably clear liability can

be determined based on prior judicial rulings of public record. *Shepard*, ¶¶ 15-20; *Coleman*, 2025 U.S. Dist. LEXIS 131378, at \*5.

BNSF, although not an insurer, is entitled to this same "reasonable basis" defense. BNSF had various reasonable bases in law and in fact to contest Plaintiffs' claims. The jury concluded that BNSF was not negligent, conclusively establishing that BNSF had a reasonable basis to challenge Plaintiffs' meritless negligence claim. BNSF similarly had a reasonable basis in law and in fact to challenge Plaintiffs' strict liability claim and Plaintiffs' *Ridley* demand.

Because BNSF had a reasonable basis in law and in fact to challenge Plaintiffs' underlying claims, dismissal of this action is appropriate. *See Coleman*, 2025 U.S. Dist. LEXIS 131378, at \*23-24.

### 1.    BNSF had a Reasonable Basis in Law and in Fact to Challenge Plaintiffs' Negligence Claim.

The jury concluded that BNSF was not negligent. Decl. Mediak ¶¶ 3-4, Ex. B-C. This conclusively establishes that BNSF had a reasonable basis to contest Plaintiffs' negligence claim. *See Shepard*, ¶ 19 (concluding that defendants had a reasonable basis in law and in fact to challenge liability where jury concluded another party was liable for the accident).

2.    **BNSF had a Reasonable Basis in Law and in Fact to Contest Plaintiffs' Strict Liability Claims Under Montana's Common Carrier Exception and Federal Preemption.**

The record in the Underlying Action demonstrates that BNSF had—and continues to have—a reasonable basis in law and in fact to contest Plaintiffs' strict liability claims because Montana follows the majority rule that recognizes the common carrier exception.  BNSF separately has a reasonable basis in law to argue that if Montana law imposes liability on BNSF under the circumstances present here, Montana law would be preempted.

BNSF was under a federal mandate to haul vermiculite concentrate.  In *Eddy*, the Montana Supreme Court adopted the common carrier exception, recognizing that "it would be unjust to subject a common carrier to strict liability for any danger done by a material the carrier is required to transport." *Eddy*, ¶ 43. As Judge Christensen noted in his 2022 order in a related case, BNSF had never been found "strictly liable" in any underlying litigation and *Eddy* protected BNSF from strict liability for "harm resulting from the transportation of vermiculite or any other activities it undertook pursuant to its duties as a common carrier." *BNSF Ry. Co. v. Ctr. for Asbestos Related Disease, Inc.*, No. CV 19-40-M-DLC, 2022 U.S. Dist. LEXIS 233804, at *10 (D. Mont. Dec. 30, 2022) (noting that there was not "any support for the proposition that BNSF is 'strictly liable' for 'maintaining

an abnormally dangerous condition in downtown Libby resulting in environmental exposure to asbestos.'").

Relying on *Eddy*, the district court denied Plaintiffs' motion for summary judgment on BNSF's defense to strict liability under the common carrier exception. Much as they do in this action, Plaintiffs asserted *Eddy* somehow established that BNSF was strictly liable and not entitled to the common carrier exception defense. *See* Decl. Mediak ¶ 5, Ex. D at 15-23.  In denying this motion, the court noted that, in *Eddy*, the Montana Supreme Court had expressly <u>adopted</u> the common carrier exception and that factual questions remained as to whether BNSF engaged in "other activities" in Libby that would fall outside the exception.  Decl. Mediak ¶ 5, Ex. D at 16 (citing *Eddy*, 459 P.3d at 875).  The district court concluded that "**<u>a genuine dispute exists</u>** as to BNSF's practices at the Libby railyard and the presence of asbestos and asbestos contaminated materials therein.  **<u>A genuine dispute also exists</u>** as to the scope of BNSF's activities that fall within the auspice of BNSF's transport of vermiculite."  Decl. Mediak ¶ 5, Ex. D at 20 (emphasis added).  The district court further held that "[f]urther development of the record" (i.e. via trial) was necessary to determine whether BNSF was entitled to the common carrier defense to strict liability.  *See* Decl. Mediak ¶ 5, Ex. D at 22-23. The district court's Order, together with Judge Christensen's order, demonstrates there remained ample room for objectively reasonable debate as to BNSF's

liability, necessitating a full jury trial and negating reasonably clear liability as a matter of law.  *See Shepard*, ¶ 17; *see also Giambra*, ¶¶ 9-16.

The absence of reasonably clear liability continued into the trial in the Underlying Action, both before and after Plaintiffs' presentation of evidence, wherein the district court (1) was unsure "what activities [Plaintiffs were] talking about that – undertaken for BNSF's own purpose . . . caused injuries to the plaintiffs in this case" and (2) expressed "serious questions" and "doubts" about the viability of Plaintiffs' strict liability claim given BNSF's reliance on the common carrier exception.  Trial Tr. 320:16-322:7, 1329:7–12, 1331:16–19, 1537:9–15.

Although the jury ultimately found against BNSF on strict liability, the court's denial of Plaintiffs' motion for summary judgment and the court's statements demonstrate that BNSF's liability was never reasonably clear and that BNSF had a reasonable basis in the law and in fact to contest Plaintiffs' claims.

Moreover, BNSF has now appealed the strict liability issue to the Ninth Circuit, and BNSF has strong arguments that the district court misconstrued Montana law or, in the alternative, Montana law is preempted by federal law including by the ICCTA.  *See* Decl. Mediak ¶¶ 7-9, Exs. F-H.

And, although Plaintiffs suggest that *Eddy* conclusively establishes that BNSF was strictly liable, Plaintiffs have filed a Motion to Certify the issue of

24

whether Montana's common carrier exception "immunize[d] BNSF from strict liability for harm caused by asbestos in or on its Libby railyard".  Decl. Mediak ¶ 10, Ex. I: Appellees' Mot. Certify Determinative Question of Law MT Sup. Ct. at 2 (Appeal May 16, 2025).  In their Motion, Plaintiffs assert that "[t]he scope of Montana's common carrier exception… **has not yet been presented to or resolved by the Montana Supreme Court**."  Decl. Mediak ¶ 10, Ex. 1 at 20 (emphasis added).  Plaintiffs' motion seeking to certify this question further demonstrates that BNSF had a reasonable basis to challenge Plaintiffs' strict liability claims.

Regardless of the outcome of the appeal, BNSF's reliance on the common carrier exception and federal preemption to contest Plaintiffs' strict liability claim and proceed to trial was reasonable at the time and was under no circumstances "wholly unreasonable."  *Freyer*, ¶ 48; *Coleman*, 2025 U.S. Dist. LEXIS 131378, at * 17 (noting that the court looks to the legal landscape that existed at the time of the insurer's actions to determine whether the insurer had a reasonable basis in law).

Because BNSF had a reasonable basis in law and in fact to assert the common carrier defense to challenge Plaintiffs' strict liability claim, and, in the alternative, to challenge Montana law on the basis of federal preemption, dismissal is appropriate.

### 3.    BNSF had a Reasonable Basis in Law and in Fact to Contest Plaintiffs' *Ridley* Demands.

BNSF also had a reasonable basis in law and in fact to contest Plaintiffs' demand for *Ridley* payments.  *Ridley* payments are only due when liability is reasonably clear.  *Teeter*, ¶¶ 15-16.  As analyzed *supra*, BNSF's liability to Plaintiffs has never been reasonably clear.

Separately, this case does not involve automobile insurance and, as this Court recognized in *Cranska*, the Montana Supreme Court has never required *Ridley* payments outside the context of automobile insurance.  *See Cranska v. UMIA Ins., Inc.*, 709 F. Supp. 3d 1200, 1210-12 (D. Mont. 2024) (aff'd No. 24-947, 2025 U.S. App. LEXIS 9026, at *1-5 (9th Cir. Apr. 14, 2025)).  In *Cranska*, the district court noted that the Montana Supreme Court's policy rationale for *Ridley* advance payments was based on the mandatory automobile insurance statutes, §§ 61-6-301-304.  *See Cranska*, 709 F. Supp. 3d at 1212 (citing *Ridley v. Guar. Nat'l Ins. Co.*, 286 Mont. 325, 951 P.2d 987, 993 (1997)).  The Court in *Cranska* (which involved medical malpractice insurance) thus concluded that the insurer had a reasonable basis in law to contest *Ridley* demands.  *Cranska*, 709 F. Supp. 3d at 1212.  Likewise, here, *Ridley*'s underlying policy rationale and the absence of a single Montana Supreme Court decision applying *Ridley* outside the context of automobile insurance after almost 30 years provides BNSF with a reasonable basis in law to contest Plaintiffs' alleged demands for advance payment.

26

For each of these reasons, BNSF had a reasonable basis in law and in fact to challenge Plaintiffs' alleged *Ridley* demands.

**D.    Plaintiffs' Claim 1 for Equitable and Disgorgement Relief is Not a Substantive Cause of Action and Must be Dismissed.**

Plaintiffs' Claim 1, "Claim for Equitable and Disgorgement Relief", should be dismissed because it is a remedy, not a cause of action under Montana law. Plaintiffs' counsel filed a nearly identical claim against National Indemnity Company and this Court concluded that dismissal was appropriate because it is an equitable remedy, not a substantive claim for relief, and equitable remedies are only available when an adequate legal remedy does not exist.  *Coleman*, 2025 U.S. Dist. LEXIS 131378, at *24-25.

Plaintiffs had an adequate legal remedy which they already pursued: their jury trial against BNSF, governed by the rules of civil procedure.  No need exists to create a new, equitable remedy, or to penalize BNSF for asserting its right to defend itself at trial, under these circumstances.

**E.    Amendment Would be Futile.**

Amendment of Plaintiffs' Complaint would be futile, so dismissal with prejudice is appropriate.  *See Coleman*, 2025 U.S. Dist. LEXIS 131378, at *25 (dismissing similar bad faith claim with prejudice because the complaint could not be saved by further amendment) (citing *Dumas v. Kipp*, 90 F.3d 386, 389 (9th Cir. 1996)).

27

Plaintiffs' common law claims are barred by the statute of limitations and Montana law does not recognize any bad faith claims handling claim against the defendant in an underlying action. Further, the record demonstrates that BNSF had a reasonable basis to challenge the meritless negligence claim Plaintiffs filed against it, and BNSF continues to have a reasonable basis in law and in fact to challenge Plaintiffs' strict liability claim and *Ridley* claims. Plaintiffs will be unable to state any viable claims against BNSF under these circumstances.

## V.    CONCLUSION

For the reasons set forth above, BNSF respectfully request this Court dismiss the Complaint with prejudice.

DATED this 25th day of August, 2025.

/s/  Emma L. Mediak
Attorneys for BNSF Railway Co.

28

CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this BNSF Railway

Company's Brief In Support Of Rule 12(B)(6) Motion To Dismiss is printed with

proportionately spaced Times New Roman text typeface of 14 points; is double-

spaced; and the word count, calculated by Microsoft Word for Microsoft 365

MSO, is 6,472 words long, excluding Caption, Certificate of Service and

Certificate of Compliance.

　　　　　　　　　　　　　　/s/ Emma L. Mediak
　　　　　　　　　　　　　　Attorneys for BNSF Railway Co.

29