## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| JACKSON WELLS, as Personal Representative for the Estate of THOMAS E. WELLS, deceased; and JUDITH HEMPHILL, as Personal Representative for the Estate of JOYCE H. WALDER, deceased, | **CV-25-30-GF-BMM** |
| Plaintiffs, | |
| v. | **ORDER ON MOTION TO DISMISS** |
| BNSF RAILWAY CO., a Delaware corporation and JOHN DOES 1-8, | |
| Defendants. | |

## INTRODUCTION

Plaintiffs Jackson Wells, as personal representative for the estate of Thomas Wells ("Wells"), and Judith Hemphill, as personal representative for the estate of Joyce Walder ("Walder") (collectively "Plaintiffs"), sued Burlington Northern Santa Fe Railway Company ("BNSF"), and John Does 1-8 (collectively "Defendants") on April 18, 2025.  (Doc. 1.) BNSF filed a motion to dismiss on August 25, 2025. (Doc. 4.) The Court held a hearing on November 21, 2025. (Doc. 18.)

1

## PROCEDURAL BACKGROUND

Plaintiffs sued BNSF, Robinson Insulation Company, and Grogan Robinson Lumber Company for negligence, strict liability, wrongful death, and punitive damages. Case 4:21-cv-00097-BMM (the "underlying action"). The suit arose from Wells's and Walder's deaths from asbestos exposure-caused mesothelioma. *Id*. Plaintiffs alleged that Wells and Walder were exposed to airborne amphibole asbestos dust at the BNSF railyard in Libby. *Id*. Plaintiffs alleged that these exposures caused Wells and Walder to develop mesotheliomas that eventually lead to their deaths. *Id*.

The Court dismissed Plaintiffs' claims against Robinson Insulation and Grogan Robinson Lumber. *Id*. BNSF remained the sole defendant in the case. *Id*. The Court conducted a 10-day jury trial from April 8, 2024, to April 19, 2024. *Id*. The jury returned a verdict that found BNSF to be strictly liable for having caused the mesothelioma and deaths of the two plaintiffs, Tom Wells and Joyce Walder. (Doc. 1 at 3.) The jury awarded $4,000,000 in compensatory damages to each plaintiff. (*Id*.) The jury also concluded that the plaintiffs had failed to prove that BNSF was negligent. (Doc. 5 at 9.) BNSF appealed the award of damages on August 5, 2024. Case 4:21-cv-00097-BMM. BNSF's appeal remains pending. The Ninth Circuit held oral argument on October 21, 2025. (Doc. 5 at 11.)

Plaintiffs filed this suit on April 18, 2025, against BNSF and John Does 1-8, (collectively "Defendants"). (Doc. 1.) Plaintiffs alleged that "Defendants John Does 1 through 4 are . . . insurers, adjusting companies and/or "persons" owing the duties alleged in the complaint as well as agents and entities related to BNSF which performed for BNSF the claim adjusting and claim handling alleged in this Complaint, and further aided and abetted BNSF's breaches of claim handling duties." (Doc. 1 ¶ 12.) Plaintiffs further allege that "Defendants John Does 5 through 8 are four . . . insurers who have settled with BNSF but retain non-delegable duties and/or contracts duties and/or committed bad faith before any such 'settlement' occurred." (*Id.* ¶ 13.)

Plaintiffs claim that BNSF "received money from its insurance companies that provided defense and indemnity to BNSF from Libby claims, including Plaintiffs' claims." (Doc. 10 at 6.) Plaintiffs allege that "[i]n exchange, BNSF contractually agreed to assume all insurance obligations from those companies." (*Id.*) Plaintiffs assert that "[i]nstead of offering $1 to Plaintiffs, BNSF engaged in litigation to delay payment on its strict liability because it makes more in interest on the money it received than it eventually pays when any judgment becomes due." (*Id.*)

Plaintiffs allege the following four claims: (1) claim for equitable and disgorgement relief; (2) claim for damages and punitive assessment for BNSF's

breach of duties to attempt good faith settlement; (3) claim for damages and punitive assessment for BNSF's breach of duties to advance medical expenses; and (4) leveraging. (Doc. 1 ¶ 37-81.) BNSF filed a motion to dismiss for failure to state a claim. (Doc. 4.) The Court held a hearing on November 21, 2025. (Doc. 18.)

## LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires claimants to include in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint under the plausibility pleading standard of Rule 8(a)(2). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

A complaint must contain sufficient factual matter to state a plausible claim for relief on its face to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim proves plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* The plausibility standard does not require probability, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must "take[] as true and construe[] in the light most favorable to plaintiffs" all factual allegations set forth in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *National Association for the Advancement of Psychoanalysis v. California Board of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citing *Halkin v. Verifone Inc*. 11 F.3d 865, 868 (9th Cir. 1993)).

## DISCUSSION

BNSF argues that Plaintiffs' claims should be dismissed for failure to state a claim. (Doc. 5 at 8.) BNSF first asserts that Montana's three-year statute of limitations bars Plaintiffs' claims. (*Id.*) BNSF argues that the Court must dismiss Plaintiffs' claims under the Montana Unfair Trade Practices Act ("UTPA") as BNSF is not an insurer as contemplated by the law and BNSF is not otherwise subject to the UTPA's claim handling and settlement obligations. (*Id.*) BNSF further argues that Plaintiffs do not qualify as "third-party claimants" with rights against BNSF under the UTPA. (*Id.*) BNSF additionally asserts that it had reasonable bases in both law and fact to contest Plaintiffs' claims in the underlying

action. (*Id*.) BNSF contends that these reasonable bases provide a complete defense to liability. (*Id*. at 8-9.) The Court will address each argument in turn.

I.     Statute of Limitations

BNSF asserts that Montana provides a three-year statute of limitations for common law bad faith claims. (Doc. 5 at 14 citing *Dietz v. GEICO Gen. Ins. Co.*, No. CV 16-74-H-CCL, 2016 WL 7378892, at *2 (D. Mont. Dec. 20, 2016), *aff'd*, 722 F. App'x 694 (9th Cir. 2018).) BNSF claims that the statute of limitations is triggered "when all the elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action." (Doc. 5 at 15, quoting *Dietz,* No. CV 16-74-H-CCL, at *3-4.) BNSF argues that the statute of limitations began to run on Plaintiffs' bad faith claims in September of 2021 as that is when Plaintiffs allege that BNSF first refused to engage in reasonable settlement discussions. (Doc. 5 at 15-16.)

Plaintiffs argue that "BNSF has not met its burden to prove that Plaintiffs' § 201 claims were untimely."  (Doc. 10 at 26, citing *Yellowstone Rental Props., LLC v. United Fin. Cas. Co*., No. CV 21-79-BLG-SPW-TJC, 2023 WL 2168511, at *5 (D. Mont. Jan. 31, 2023), *report and recommendation adopted*, 2023 WL 2161411 (D. Mont. Feb. 22, 2023).) Plaintiffs argue that BNSF's motion to dismiss should be denied as it is not apparent from the face of the complaint when the statute of

limitations began to run. (Doc. 10 at 26-27, citing *Yellowstone*, No. CV 21-79-BLG-SPW-TJC, at \*5, and *Joe Hand Promotions Inc. v. Gonzalez*, 423 F. Supp. 3d 779, 782 (D. Ariz. 2019).) Plaintiffs assert that the complaint does not state the dates that Plaintiffs issued a demand on BNSF for payments or the dates that BNSF first denied coverage to them. (Doc. 10 at 27.) Plaintiffs argue that the moment the statute of limitations started accruing remains unclear from the face of the complaint as these dates are not included in the face of the complaint. (*Id.*)

Plaintiffs also assert that BNSF's conduct constitutes ongoing violations of continuing duties, rather than one single instance of bad conduct. (*Id.*) Plaintiffs argue that BNSF's cited case, *Nelson v. Hartford Ins. Co. of Midwest*, No. CV 11–162–M–DWM, 2012 WL 5874457, at \*4 (D. Mont. Nov. 20, 2012), involved a discrete event of bad conduct. (Doc. 10 at 28.) BNSF characterizes *Nelson* as involving repeated denials and delayed payments. (Doc. 17 at 6.) Plaintiffs argue that *Cyr v. Farmers Alliance Mutual Ins. Co*., 2006 WL 2788972, at \*4 (D. Mont. Sept. 26, 2006), "recognized the 'continuing nature of the duty of good faith' and that a statute of limitations analysis required separate consideration of each instance of conduct." (Doc. 10 at 28.) BNSF asserts that *Cyr* "explicitly rejected 'any suggestion that each day that [the insurer] stands by its previous denial of coverage and fails to reverse its position, a new breach of its statutory duty of good

faith occurs.'" (Doc. 17 at 6, quoting *Cyr*, 2006 WL 2788972, at *4.) The Court

agrees with BNSF.

The case law establishes that ongoing denial of coverage does not toll the

statute of limitations, despite the insurer having a continuing duty of good faith.

*Nelson*, No. CV 11-162-M-DWM, at *4. The "suggestion that each day that [the

insurer] stands by its previous denial of coverage and fails to reverse its position, a

new breach of its statutory duty of good faith occurs . . . would effectively

eviscerate the statute of limitation in any case where an insurer remains steadfast in

a denial of coverage." *Id*. (quoting *Cyr*, 2006 WL 2788972, at *4).  "While

subsequent conduct may give rise to new claims, later conduct that merely affirms

the initial denial of coverage does not reset the limitations period." *Davis v.*

*Pacificsource Health Plans*, No. CV 19-180-M-DWM, 2020 WL 1812114, at *2

(D. Mont. Apr. 9, 2020).

The current record does not clearly demonstrate, however, when all elements

of Plaintiffs' UTPA cause of action accrued or became complete. Under the

UTPA, "a claim or cause of action accrues when all elements of the claim or cause

exist or have occurred, the right to maintain an action on the claim or cause is

complete, and a court or other agency is authorized to accept jurisdiction of the

action[.]" Mont. Code Ann. § 27–1–102(1)(a). The Court declines to dismiss

Plaintiffs' claims at the motion to dismiss stage as no sufficient factual record exists to demonstrate that the statute of limitations has run.

Plaintiffs filed their lawsuit against BNSF for the underlying action on September 23, 2021. (Doc. 1 ¶ 21.) Plaintiffs assert that "at all times from the September 2021 presentation of Plaintiffs' claims through April 22, 2024, BNSF" took actions that violated the UTPA. (*Id*. ¶ 30.) No facts in the Complaint prove when Plaintiffs made settlement requests or when BNSF denied such requests. It remains unclear whether the September 23, 2021, filing date triggered the statute of limitations pursuant to § 27–1–102(1)(a). The Court finds it is proper to allow discovery and development of the factual record to determine when the statute of limitations began to run, and if, in fact, Montana's three-year statute of limitations bars Plaintiffs' claims.

The case law demonstrates that summary judgment proves a more appropriate time to evaluate defenses under the UTPA's statute of limitations. The primary cases upon which the parties rely decided the statute of limitations question at the summary judgment stage. *Nelson*, No. CV 11-162-M-DWM, at *4, determined that the statute of limitations barred the plaintiff's UTPA claims at summary judgment. *Nelson* depended upon the factual record to support its decision. *Id. Cyr*, No. CV-04-99-BLG-RFC, at *5, dismissed a portion of the plaintiff's claims at summary judgment. The factual record had been developed in

*Cyr* as the court determined that several of the plaintiff's UTPA claims were not barred as they involved conduct that had occurred after the cutoff date for the statute of limitations. *Id. Dietz,* No. CV 16-74-H-CCL, at *2, dismissed the plaintiff's claims on a motion to dismiss based on its determination that the date of judgment in the underlying action had triggered the running of the statute of limitations. The date of judgment in the underlying action in this case is April 22, 2024. The statute of limitations would not bar Plaintiffs' UTPA claims if the Court were to apply the same reasoning as *Dietz*.

*Yellowstone Rental Props.*, No. CV 21-79-BLG-SPW-TJC, at *5, declined to dismiss the plaintiff's UTPA claims on a motion to dismiss as it found that the complaint had not specified when the acts at issue occurred. The court reasoned that several alleged events may have been relevant to when the action had accrued, including the trial, the court's findings and conclusions, and the entry of final judgment, in addition to the actual actions taken as part of the allegedly wrongful conduct in the complaint. *Id.* at *6. *Yellowstone* emphasized that the burden rests on the defendant to demonstrate that the action is time barred and that it is "beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* at *5 (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010)). The time of accrual for Plaintiffs'

claim remains unclear from the face of the Complaint. The Court finds that dismissal of the complaint would not be appropriate.

II.    <u>UTPA Claims Pursuant to § 33-18-242 through § 33-18-201</u>

*Couto v. CorVel Enters. Comp., Inc*. recently recognized that "[t]here are three different possible types of claims at issue [in a UTPA case]: [1.] claims under § 33-18-201, which prohibits 'a person' from engaging in certain 'general business practices,' and is enforceable through an implied private right of action; [2.] claims under § 33-18-242, which provides 'an independent cause of action against an insurer for actual damages caused by insurer's violation of' certain business practices enumerated in § 33-18-201; [ and 3.] and common-law tort claims." No. CV 24-144-M-DWM, 2025 WL 2158641, at *8 (D. Mont. July 30, 2025). Plaintiffs have pleaded § 33-18-242 claims through the § 33-18-201 independent cause of action, and § 33-18-201 claims through common law bad faith claims. (Doc. 10 at 10.)

Pursuant to § 33-18-201(6), insurers may not "neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." Mont. Code Ann. § 33-18-201(6). Section 33-18-242 provides third-party claimants with a private right of action to enforce § 33-18-201. Mont. Code Ann. § 33-18-242.

A.    <u>Whether BNSF is an "insurer"</u>

11

BNSF asserts that the UTPA serves "to regulate trade practices in the business of insurance." Mont. Code Ann. § 33-18-101. BNSF contends that it is not an "insurer" because it is not primarily in the business of insurance. (Doc. 5 at 19.) BNSF argues that the provisions of § 33-18-201 do not apply as it does not qualify as an insurer within the meaning of the statute.

Plaintiffs argue that BNSF "bought back insurance policies covering Plaintiffs' personal injury claims, thus receiving money in exchange for contractually assuming insurers' duties of defense, indemnification, settlement." (Doc. 10 at 13 citing Doc. 1 ¶¶ 38, 12.) Plaintiffs contend that BNSF "stepped *into the shoes* of those insurers and assumed their duties under Montana law" by entering these "buy-back" agreements. (Doc. 10 at 14.) [emphasis in original].

BNSF cites *Ogden v. Montana Power Co.*, 747 P.2d 201, 204 (Mont. 1987), and *Shattuck v. Kalispell Reg'l Med. Ctr., Inc.*, 261 P.3d 1021, 1026 (Mont. 2011), to support its position that only those entities who are "in the business of insurance" can be held liable under the UTPA. (Doc. 5 at 19-20.) *Ogden* determined that the UTPA did not apply to a self-insured entity like the Montana Power Company. 747 P.2d at 204. The Montana Supreme Court considered the following definition of insurer under § 33-18-201(6): "'Insurer' includes every person engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance." *Ogden*, 747 P.2d at 204-05. The Montana Supreme Court

concluded that "MPC is primarily in the business of providing power and utilities to customers, although it insures itself." *Id*. at 205. The Montana Supreme Court determined that the UTPA does not apply to MPC in this case as "[t]he legislature did not intend a self-insured entity to be subject to all the technical Montana insurance industry regulations." *Id*.

*Shattuck* concluded that the publicly funded Children's Health Insurance Program ("CHIP") was not insurance, and the Department of Public Health and Human Services did not qualify as an "insurer" subject to the UTPA. 261 P.3d at 1026. *Shattuck* cited *Ogden* and reasoned that "the 'business' of DPHHS is to provide public assistance, not to enter into insurance contracts." *Shattuck*, 261 P.3d at 1026. *Shattuck* specifically noted that pursuant to §§ 33-2-101(1), (3), "[a]ny person or entity desiring to act as an insurer must obtain a certificate of authority issued by the commissioner." *Shattuck*, 261 P.3d at 1026. *Shattuck* determined that DPHHS, an agency of state government, lacks any certificate of authority from the insurance commissioner. *Id*. *Shattuck* further reasoned that DPHHS does not behave like an insurer as CHIP enrollees pay no premiums and both eligibility and availability of benefits are entirely dependent on sufficient funding. *Id*. at 1027.

Plaintiffs contend that BNSF is not merely a business that happens to be self-insured like the MPC in *Ogden*. Plaintiffs argue instead that BNSF engaged in a scheme to pervasively buy back insurance policies to strategically profit. (Doc.

10 at 13-14.) Plaintiffs also argue that BNSF's cited case, *Fortner Honey, Inc. v. Allianz Glob. Risks US Ins. Co*., No. CV 22-13-BLG-SPW-KLD, 2022 WL 5220322, at *5 (D. Mont. Aug. 22, 2022), *adopted in full*, 2022 WL 4546287 (D. Mont. Sept. 29, 2022), differs from the case here. (Doc. 10 at 13-14.) Plaintiffs note that *Fortner* reasoned that "nothing indicated the individual 'frequently engaged in bad practices.'" (Doc. 10 at 13-14, quoting *Fortner*, No. CV 22-13-BLG-SPW-KLD, at *5.) *Fortner* found no evidence to demonstrate that the actor had been an adjuster under the statute, or that the actor had "committed unfair trade practices with such frequency to lead to a business practice." *Fortner*, No. CV 22-13-BLG-SPW-KLD, at *5. Plaintiffs contend that BNSF's actions of "systematically buying back insurance policies and assuming attendant duties" differs. (Doc. 10 at 14.)

Plaintiffs plausibly have alleged that BNSF stands as an "insurer" for the purposes of UTPA liability. BNSF's alleged buyback of its own insurance policies differs from the MPC's self-insurance in *Ogden*, or the role played by DPHHS in administering the publicly funded CHIP program in *Shattuck*. Plaintiffs assert that BNSF "bought back insurance policies covering Plaintiffs' personal injury claims, thus receiving money in exchange for contractually assuming insurers' duties of defense, indemnification, settlement." (Doc. 10 at 13 citing Doc. 1 ¶¶ 38, 12.) To take Plaintiffs' allegations as true, it proves plausible that BNSF sufficiently

entered the "business of insurance" such that it should be subject to the protections and limitations of the UTPA. The Court also finds BNSF's position troubling as it appears to suggest that a party could buy-out its own insurance policy from an insurer who properly would be subject to the UTPA and effectively eviscerate those UTPA provisions. This loophole seemingly would allow BNSF to receive the benefit of insurance coverage without the inconvenience of the limitations imposed by the Montana legislature on BNSF's insurance provider.

Discovery on the matter seems necessary to determine the scope and content of the alleged buyback agreements between BNSF and its previous insurers. Those alleged buyback agreements may illuminate the record and provide valuable details concerning whether BNSF properly should be considered an "insurer" under the UTPA. The agreements also may provide information relating to additional defenses that BNSF may assert in future proceedings. The Court declines to dismiss Plaintiffs' claims under § 33-18-201.

B. Whether Plaintiffs stand as "third-party claimants"

The UTPA states that an insured or third-party claimant possesses "an independent cause of action against an insurer for actual damages caused by the insurer's violation of subsection (1), (4), (5), (6), (9), or (13) of 33-18-201." Mont. Code Ann. § 33-18-201. BNSF contends that Plaintiffs do not qualify as third-party claimants because they have not "sued the insurer based on its handling of the

plaintiff's underlying claim against the insured." (Doc. 17 at 9.) BNSF argues that Plaintiffs cannot qualify as third-party claimants as BNSF does not sit as the insurer of the defendant in the underlying action, but instead is the defendant itself. (*Id*. at 10.)

BNSF cites *Hart v. Pacificsource Health Plans*, No. CV-18-56-BU-BMM-JCL, 2019 WL 3244634, at *4 (D. Mont. July 19, 2019), which concluded that the plaintiff did not have third-party claimant status. *Hart* reasoned that "[t]he UTPA remains clear that '[a] third-party may not file an action under this section until after the underlying claim has been settled or a judgment entered in favor of the claimant on the underlying claim.'" *Id. Hart* found that the plaintiff's failure to have filed a claim against the first-party insured prevented the plaintiff from being a third-party claimant with a cause of action under the UTPA. *Id*.

Plaintiffs counter that "[a] third-party claimant is one who sues the insurer of another party rather than their own insurer." (Doc. 10 at 14 citing *Dzintars v. Fireman's Fund Ins. Co*., No. CV-24-45-BU-BMM, 2024 WL 4347887, at *2 (D. Mont. Sept. 30, 2024).) Plaintiffs argue that "Montana allows lawsuits by those 'who are damaged by an insurance company's conduct but have no contractual relationship to that company.'" (Doc. 10 at 14, quoting *O'Fallon v. Farmers Ins. Exch*., 859 P.2d 1008, 1013 (1993).)

The Court finds BNSF's arguments unpersuasive. BNSF's logic would require Plaintiffs first to sue the non-existent "insurer" before suing BNSF. Plaintiffs plausibly have alleged that BNSF qualifies as an "insurer" for purposes of the UTPA. Using BNSF's logic, Plaintiffs properly have sued the insurer, BNSF, based on its handling of Plaintiffs' underlying claims against the insured, BNSF. Plaintiffs sufficiently have alleged that they qualify as third-party claimants for purposes of the UTPA. The Court declines to dismiss Plaintiffs' § 33-18-201 claims against BNSF.

C. <u>Whether BNSF had a reasonable basis in law and fact to contest Plaintiffs' claims</u>

An insurer affirmatively may assert a "reasonable basis" defense that it cannot be liable for UTPA violations if it "had a reasonable basis in law or in fact" for contesting the claim. Mont. Code Ann. § 33-18-242(5); *Dean v. Austin Mut. Ins. Co*., 869 P.2d 256, 258 (Mont. 1994). "An insurer asserting this affirmative defense has the burden of establishing it by a preponderance of the evidence." *Redies v. Att'ys Liab. Prot. Soc.*, 150 P.3d 930, 937 (Mont. 2007). BNSF contends that liability was not reasonably clear for Plaintiffs' negligence claims, strict liability claims, or *Ridley* demand. (Doc. 5 at 28.)

BNSF argues that it had a reasonable basis to contest Plaintiffs' negligence claim as the jury in the underlying case found that BNSF was not negligent. (*Id*.,

citing *Shepard v. Farmers Ins. Exch.*, 477 P.3d 1114, 1117 (Mont. 2020).) Applying this logic, BNSF must not have had a reasonable basis to contest Plaintiffs' strict liability claims as the jury found BNSF strictly liable for the harm to Wells and Walder. The Court declines to base its decision on this reasoning. *Graf v. Cont'l W. Ins. Co.*, 89 P.3d 22, 26 (Mont. 2004), also rejected the proposition that a defense verdict provides a reasonable basis defense to a subsequent UTPA claim.

Plaintiffs first argue that BNSF's reasonable basis defense proves pretextual. (Doc. 10 at 15.) Plaintiffs argue that BNSF's defense serves as a pretext for BNSF's nationwide policy of ignoring its settlement obligations to advance its investment strategy. (*Id*. at 16.) Plaintiffs argue that BNSF's policy mirrors the unlawful practice by the defendant in *Est. of Gleason v. Cent. United Life Ins. Co*., 350 P.3d 349, 360 (Mont. 2015). (*Id*.) Plaintiffs assert that the jury in *Gleason* found that the defendant's reasonableness defense served as a pretextual excuse when executing a "nationwide policy that had little or nothing to do with considerations of Montana law." (Doc. 10 at 15, quoting *Gleason*, 250 P.3d at 360.)

BNSF argues that *Gleason* does not apply. BNSF points to the existence of conflicting evidence in *Gleason* about whether the insurer had knowledge of Montana law when denying claims. (Doc. 17 at 15.) BNSF has asserted the same defenses to liability throughout the underlying litigation. (*Id*.) The Court declines to address Plaintiffs' argument that BNSF's reasonable basis defense is pretextual.

18

The Court instead concludes that it would not be proper to dismiss Plaintiffs' claims at this stage based on the alleged absence of reasonably clear liability.

"[R]easonableness is generally a question of fact[,]" and it remains "for the trier of fact to weigh the evidence and judge the credibility of the witnesses in determining whether the insurer had a 'reasonable basis' for denying a claim." *Redies*, 150 P.3d at 937 (quoting *Dean,* 869 P.2d at 258). Two exceptions exist to this general rule. *Redies*, 150 P.3d at 938. The first exception applies when no insurance coverage was in effect at the time of the alleged damage. *Id*. The second exception, that reasonableness presents a question of law for the court to determine, applies "when it depends entirely on interpreting relevant legal precedents and evaluating the insurer's proffered defense under those precedents." *Id.*; *see also Gleason*, 150 P.3d at 359.

A court must analyze the insurer's claims of reasonable basis in law based upon the legal landscape at the time. *Redies*, 150 P.3d at 938-39. "[A]bsent caselaw on point, 'the determinative question' is whether the law in effect at the time, caselaw or statutory, provided sufficient guidance to signal to a reasonable insurer that its grounds for denying the claim were *not* meritorious." *Cranska v. UMIA Ins., Inc.*, 709 F. Supp. 3d 1200, 1209 (D. Mont. 2024), *aff'd*, No. 24-947, 2025 WL 1098879 (9th Cir. Apr. 14, 2025) (quoting *State Farm Mut. Auto. Ins. Co. v. Freyer*, 312 P.3d 403, 419 (Mont. 2013)) [emphasis in original].

Plaintiffs argue that legal precedents and the legal landscape at the time

BNSF asserted its common carrier defense demonstrated that it was unreasonable.

(Doc. 10 at 18.) Plaintiffs cite *BNSF Ry. Co. v. Eddy*, 459 P.3d 857, 874 (Mont.

2020), and the Court's order on summary judgement, for the contention that BNSF

had been "'collaterally estopped from arguing that its handling of asbestos in Libby

was not [an] abnormally dangerous' activity for which it is strictly liable." (Doc.

10, quoting *Wells v. BNSF Ry. Co.*, No. CV-21-97-GF-BMM, 2023 WL 6807147, at

*5 (D. Mont. Oct. 16, 2023).) *Eddy* estopped BNSF from arguing that its handling

of asbestos in Libby did not constitute an abnormally dangerous activity. *Eddy*

provided no definitive conclusion regarding BNSF's strict liability, however, as

BNSF's potential strict liability pertained to the issues at trial and the scope of the

common carrier exception. *Eddy*, 459 P.3d at 874.

BNSF contends that it possessed a reasonable basis in law and fact to contest

Plaintiffs' strict liability claims based on potential defenses provided by Montana's

common carrier exception and federal preemption. (Doc. 4 at 29.)  BNSF reasons

that it clearly had a reasonable basis to contest strict liability as the Court denied

summary judgement to Plaintiffs on the issue. (*Id*. at 30, citing Ex. 4; *Wells*, No.

CV-21-97-GF-BMM.) This Court in *Wells* concluded that "[a] genuine dispute

exists as to BNSF's practices at the Libby railyard and the presence of asbestos and

asbestos contaminated materials therein. A genuine dispute also exists as to the

scope of BNSF's activities that fall within the auspice of BNSF's transport of vermiculite." (Doc. 4 at 30, quoting Ex. 4 at 20; *Wells*, No. CV-21-97-GF-BMM, at *5.) BNSF argues that this order, in combination with *BNSF Ry. Co. on behalf of United States v. Ctr. for Asbestos Related Disease, Inc.*, No. CV 19-40-M-DLC, 2022 WL 18010332 (D. Mont. Dec. 30, 2022), demonstrate that Plaintiffs' strict liability claim did not present "reasonably clear liability" against BNSF. (Doc. 4 at 30-31.)

Redies expressly rejected the argument that an insurer possesses a reasonable basis in law to contest liability if a court has not yet explicitly rejected their legal proposition. 150 P.3d at 940. *Redies* concluded that such an interpretation would "turn[] reasonableness on its head and run[] contrary to the public policy of Montana[.]" *Id. Redies* recognized that the point of having a court evaluate the reasonableness of the insurer's proffered defense serves to discourage "claims settlement abuses the UTPA was designed to deter," including efforts "to obtain defense verdicts in the underlying suit at any cost." *Id*.

The fact that the Court declined to issue summary judgment in Plaintiffs' favor on the issue of strict liability does not affirmatively prove that BNSF had a reasonable basis in law to contest the action. The Court's order simply demonstrated that a genuine dispute of material facts existed that prevented the Court from holding BNSF strictly liable at the summary judgment stage. The

presence of a genuine dispute of material facts does not equate to BNSF having reasonably denied all liability.

For example, it could be true that the legal landscape at the time demonstrated that BNSF properly should be held strictly liable but that the scope of that liability, and the activities to which this liability extended, presented a question of fact for the jury. Similarly, *BNSF Ry. Co.* did not affirmatively hold that BNSF reasonably could contest strict liability but rather concluded that BNSF's status as a common carrier protected it from liability for at least some of its actions in the transport of vermiculite. No. CV 19-40-M-DLC. *BNSF Ry. Co.* provides some insight into the legal landscape at the time but does not affirmatively prove that BNSF possessed a reasonable basis defense.

The Court remains concerned by the dispute surrounding what conduct triggered BNSF's UTPA obligations. The Complaint fails to make clear at what point BNSF first asserted its reasonable basis defense. The Court must analyze the reasonableness of BNSF's defense depending on the legal landscape at the time that BNSF asserted the defense. To allow further development of the factual record through discovery will aid the Court in evaluating BNSF's reasonableness defense.

*Redies*, 150 P.3d at 932, determined the reasonableness of the insurer's defense as a matter of law at summary judgment. *Gleason*, 150 P.3d at 360, determined whether the insurer had a reasonable basis in law to contest liability at

summary judgment. *Cranska*, 709 F. Supp. 3d at 1217, determined whether the defendants had a reasonable basis in law to dispute claims at summary judgement. The Court will follow a similar path.

D.    *Ridley* Payments

Plaintiffs further argue that BNSF lacked a reasonable basis to deny *Ridley* payments. (Doc. 10 at 22.) An insurer must timely advance payment for an injured party's out-of-pocket medical expenses incurred because of an incident under Montana law where liability is reasonably clear. *See Ridley v. Guaranty Nat'l Ins. Co.*, 951 P.2d 987 (Mont. 1997). BNSF contends that it had a reasonable basis to deny *Ridley* payments as liability was never reasonably clear and the Montana Supreme Court never has required *Ridley* payments outside the context of automobile insurance. (Doc. 5 at 33, citing *Cranska*, 709 F. Supp. 3d at 1210-12.) *Cranska* concluded that the insurer had a reasonable basis to contest *Ridley* payments when the Montana Supreme Court had not clarified whether *Ridley* applies beyond the automobile insurance context. 709 F. Supp. 3d at 1210-12.

Plaintiffs respond that the Montana Supreme Court has never faced the issue of *Ridley* payments in a non-automobile insurance context and that *Ridley* applies to all insurers, without limitation. (Doc. 10 at 22-21, citing *Satterwhite v. Sedgwick Claims Mgmt. Servs., Inc*., No. CV 23-58-BU-DLC, 2024 WL 3822844, at *6 (D. Mont. Aug. 14, 2024).) *Satterwhite* concluded that the plaintiffs had a legal basis to

make their argument that *Ridley* applied beyond the automobile context. *Satterwhite*, No. CV 23-58-BU-DLC, at *6. *Satterwhite* did not affirmatively decide that *Ridley* does apply beyond the automobile context. *Id*.

The Court concludes that *Cranska* provides persuasive precedent on the issue, yet it remains appropriate to allow the matter to proceed to discovery. The court decided *Cranska* on summary judgment and the Court finds it is appropriate to develop the factual record as it pertains to the legal landscape and BNSF's reasonableness defenses. The Court declines to dismiss Plaintiffs' *Ridley* claims.

III.   Common Law Claims

Plaintiffs alternatively have pleaded that BNSF stands liable as a person under § 33-18-201 and the common law. (Doc. 10 at 24.) "[I]ndividuals, as well as insurers, are prohibited from engaging in unfair trade practices set forth in § 33-18-201, MCA," and "when an individual breaches the obligations imposed by that statute, the claimant who is damaged by that breach has a [private right of action] against that individual." (Doc. 10 at 24, quoting *O'Fallon*, 859 P.2d at 1015.) Plaintiffs assert that "[b]ecause a § 33-18-201 claim against a 'person' is separate from a § 33-18-242 claim, § 242(6) which provides the reasonable basis in law or fact defense does not apply. (Doc. 10 at 24.) The only 'reasonableness' defense available is whether liability was 'reasonably clear' as required under §§ 33-18-201(6), (13)." (Doc. 10 at 24-25.) Plaintiffs allege that BNSF's investment claim

24

strategy renders it a "person" who violated § 201 "with such frequency as to indicate a general business practice[.]" (Doc. 10 at 25, citing *Leaphart v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. CV-15-106-GF-BMM, 2016 WL 81234, at \*2 (D. Mont. Jan. 7, 2016).)

BNSF makes similar defenses to Plaintiffs' § 33-18-201 common law claims as discussed in previous sections of this order. BNSF argues that though "the UTPA broadly defines the term 'person,' the statutory definition does not define the scope of the implied cause of action." (Doc. 17 at 13.) BNSF asserts that Plaintiffs fail to provide any legal authority where a Montana court has recognized an implied statutory cause of action against a person or entity who was not handling a third-party liability claim, working on behalf of an insurer, or otherwise engaged in the business of insurance. (*Id.*)

The Court finds unpersuasive BNSF's implied argument that Plaintiffs' claims should be dismissed as allegedly no court has yet extended the statutory definition of "person" to its broad potential for a § 33-18-201 common law claim. The Court already has determined that Plaintiffs plausibly have alleged that BNSF handled a third-party liability claim, worked on behalf of an insurer, or otherwise engaged in the business of insurance to the degree that it stands subject to potential § 33-18-201 common law liability under its own logic. The Court declines to dismiss Plaintiffs' § 33-18-201 common law claims.

IV.    <u>Unjust Enrichment</u>

Unjust enrichment represents "an equitable claim for restitution to prevent or remedy inequitable gain by another" and considers whether: (1) a benefit was conferred upon recipient by claimant; (2) the recipient knew about or appreciated the benefit; and (3) the recipient accepted or retained the benefit under circumstances rendering it inequitable for recipient to do so without compensating claimant for the value of the benefit. *Beck v. Dimar*, 554 P.3d 130, 137 (Mont. 2024). BNSF argues that *Coleman v. Nat'l Indem. Co.*, No. CV-19-39-GF-JTJ, 2025 WL 1918769, at *8 (D. Mont. July 10, 2025), concluded "that dismissal was appropriate because it is an equitable remedy, not a substantive claim for relief, and equitable remedies are only available when an adequate legal remedy does not exist." (Doc. 5 at 34.) *Coleman* declined to recognize equitable remedies, like disgorgement, when the UTPA provided adequate remedies at law. No. CV-19-39-GF-JTJ, at *8.

Plaintiffs first contest application of *Coleman* as not binding authority. (Doc. 10 at 29-30.) Plaintiffs contend that compensatory damages under the UTPA fail to provide an adequate remedy because it would not "take back from BNSF the interest it has made while pursuing Warren Buffet's insurance investment strategy." (*Id*.) Plaintiffs argue that BNSF should not be able to "keep its wins" from Plaintiffs' stolen money. (*Id.*)

26

Plaintiffs further contend that *Coleman* cites case law that supports Plaintiffs' claims for constructive trust or disgorgement where no other way exists to address the inequity of unjust enrichment. (*Id*.) For example, Plaintiffs cite *N. Cheyenne Tribe v. Roman Cath. Church ex rel. Dioceses of Great Falls/Billings*, 296 P.3d 450, 457 (Mont. 2013), as an example of case law supporting their claim for unjust enrichment. (Doc. 10 at 30.) *N. Cheyenne Tribe* concluded that "it is sufficient" in the context of a constructive trust, "that the defendant gained something that it should not be allowed to retain," regardless of whether the defendant deprived the plaintiff of something. 296 P.3d at 457. *N. Cheyenne Tribe* cited the *Restatement (First) of Restitution* § 1 (1937), for the contention that "where 'a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases any loss, but nevertheless the enrichment of the defendant would be unjust . . . the defendant may be under a duty to give the plaintiff the amount by which [the defendant] has been enriched.'" *N. Cheyenne Tribe*, 296 P.3d at 457.

The Court declines to apply *Coleman*'s reasoning. *N. Cheyenne Tribe* supports Plaintiffs' arguments that Defendants have received an unjust benefit to the extent that legal relief through the UTPA may not be sufficient. The Court denies BNSF's motion to dismiss Plaintiffs' unjust enrichment claims.

**CONCLUSION**

27

The Court denies BNSF's motion to dismiss. (Doc. 4.) Plaintiffs have sufficiently pleaded UTPA claims to avoid a motion to dismiss. Discovery will be needed to determine the scope of BNSF's alleged buyback agreements, the reasonableness of BNSF's defenses, and the triggering date of the statute of limitations.

## ORDER

Accordingly, **IT IS ORDERED** that BNSF's Motion to Dismiss (Doc. 4) is **DENIED**.

DATED this 1st day of December, 2025.

Brian Morris, Chief District Judge
United States District Court